UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

————————————————————————————

MARTIN OWEN,

                        Plaintiff,

        -vs-                          **No. 1:13-CV-00484 (MAT)**
                                      **DECISION AND ORDER**
CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,
                        Defendant.

————————————————————————————

## I.   Introduction

        Represented by counsel, Martin Owen ("plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI").  The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g).  Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  For the reasons discussed below, plaintiff's motion is granted and this matter is reversed and remanded solely for the calculation and payment of benefits.

## II.  Procedural History

        The record reveals that in March 2010, plaintiff (d/o/b August 20, 1961) applied for DIB and SSI, alleging disability as of June 2006. After his application was denied, plaintiff requested a hearing, which was held, via videoconference, before administrative

law judge Roxanne Fuller ("the ALJ") on September 6, 2011. On September 23, 2011, the ALJ issued an unfavorable decision. The Appeals Council denied review and this timely action followed.

## III. Summary of the Evidence

Plaintiff began treating at Horizon Health Services ("Horizons") in March 2007. He had previously treated for major depressive disorder with his primary care physician, who prescribed Effexor, an antidepressant, and Xanax, a sedative, for symptoms of depression and anxiety. Plaintiff's condition had worsened since January 2007, when his partner committed suicide after both plaintiff and his partner lost their jobs at JetBlue Airways. Plaintiff's symptoms were noted to be severe, and he reported some suicidal ideation but stated that "he would not kill himself because his parents [were] alive." T. 302. Subsequent treatment notes contain repeated mental status examination ("MSE") findings of agitated or depressed affect, some irregularities in thought processes, and consistent thoughts of suicide. Although the record does not contain all of the treatment notes, it appears that plaintiff treated on at least a biweekly basis with Horizons, where plaintiff saw psychiatrist Dr. Richard Wolin and counselors Lisa Pelczynski and Colleen Strasser.

In March 2010, Ms. Pelczynski completed a psychological assessment for determination of employment eligibility. Ms. Pelczynski reported that plaintiff treated biweekly at

Horizons. His current medications were Budeprion (Wellbutrin), an antidepressant, and Clonazepam (Klonopin), a sedative for the treatment of anxiety symptoms. Ms. Pelczynski opined that plaintiff was moderately limited in understanding and remembering complex instructions; maintaining attention and concentration; interacting appropriately with others; maintaining socially appropriate behavior; using public transportation; and performing low stress, simple tasks. In Ms. Pelczynski's opinion, plaintiff was very limited in maintaining basic standards of personal hygiene and grooming.

In April 2010, psychologist David Pliss, Ph.D., submitted a functional capacity questionnaire, indicating that he had treated plaintiff twice a month since July 2008. Dr. Pliss reported that at plaintiff's last mental status examination ("MSE"), plaintiff displayed tangential thought processes, flat affect, low mood, evidenced thoughts of self-harm, and his insight and judgment "lean[ed] toward pessimistic." T. 253. Dr. Pliss reported that plaintiff rarely left his apartment and had "no social life." T. 254. Dr. Pliss declined to provide an opinion regarding plaintiff's ability to do specific work-related activities, but opined that plaintiff was "disabled from full time work." Id.

Dr. Nikita Dave completed a consulting internal medicine examination, at the request of the state agency, in May 2010. Dr. Dave noted that plaintiff "definitely seem[ed] moderately

3

depressed" at the examination and commented that a psychiatric evaluation should be considered "for [plaintiff's] predominant complaint." T. 291, 294. Despite that recommendation, no consulting psychiatric examination was ever performed. Instead, state agency reviewing psychologist Dr. T. Andrews completed a psychiatric review technique ("PRT") questionnaire in May 2010. Dr. Andrews concluded that plaintiff had mild restrictions in ADLs and maintaining concentration, persistence, or pace, and moderate limitations maintaining social functioning.

In November 2010, Dr. Wolin signed a detailed mental RFC questionnaire completed by counselor Colleen Strasser. In handwritten commentary, Ms. Strasser noted that plaintiff had treated at Horizons since March 2007, and that his highest global assessment of functioning ("GAF") score in the past year had been 55. See generally American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), at 34 (4th ed. rev. 2000) (describing GAF scoring). His current medications were Wellbutrin and Klonopin. Clinical findings supporting the opinion included MSE findings of agitated and depressed affect, poor concentration, difficulties with memory, and fleeting suicidal ideation.

Ms. Strasser and Dr. Wolin opined that plaintiff was "unable to meet competitive standards" in numerous areas of work functioning, including understanding and carrying out simple

instructions, maintaining concentration for even a two-hour segment, sustaining an ordinary routine without special supervision, preforming at a consistent pace, and responding appropriately to routine changes in a work setting. According to Dr. Wolin and Ms. Strasser, plaintiff had "no useful ability to function" in the areas of working in coordination with or proximity to others without being unduly distracted, completing a normal workday or workweek without interruptions from psychologically-based symptoms, accepting instructions and responding appropriately to criticism from supervisors, getting along with coworkers or peers without exhibiting behavioral extremes, and dealing with normal work stress. Id.

In handwritten commentary, it was noted that plaintiff "often [became] agitated and [had] poor boundaries with others," symptoms "interfere[d] with concentration, focus, memory retention and carrying out responsibilities," and "symptoms . . . interfer[ed] with ADLs and sleep patterns." T. 297. According to Dr. Wolin and Ms. Strasser, plaintiff would miss more than four days of work per month due to his condition, and his impairment was expected to last at least 12 months. The opinion commented that plaintiff was "not deemed appropriate at this time to be able to function in [a] competitive work environment." T. 299.

5

## IV.   The ALJ's Decision

Initially, the ALJ found that plaintiff met the insured status requirements of the Act through December 30, 2011. At step one of the five-step sequential evaluation, see 20 C.F.R. §§ 404.1520, 416.920, the ALJ determined that plaintiff had not engaged in substantial gainful activity since June 16, 2006, the alleged onset date. At step two, the ALJ found that plaintiff suffered from the severe impairment of depression. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any listed impairment. The ALJ found that plaintiff had moderate restrictions in activities of daily living ("ADLs"), social functioning, and concentration, persistence or pace, and no prior episodes of decompensation.

Before proceeding to step four, the ALJ determined that plaintiff retained the residual functional capacity ("RFC") to "perform a full range of work at all exertional levels but with the following nonexertional limitations: able to remember and carry out one to two step instructions; able to perform simple, routine and repetitive tasks; able to work in a low stress job, defined as having occasional decision making required, occasional changes in the work setting, in an environment free of fast-paced production requirements; occasional interaction with the public; and occasional interaction with coworkers." T. 60. At step four, the

ALJ found that plaintiff was unable to perform past relevant work. At step five, the ALJ found that considering plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy which plaintiff could perform. Accordingly, he found that plaintiff was not disabled.

## V.   Discussion

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

Plaintiff contends that the ALJ failed to properly evaluate the opinions of plaintiff's treating sources, especially the joint opinion provided by Dr. Wolin and Ms. Strasser ("Dr. Wolin's opinion"). The ALJ explicitly gave no weight to the opinions of plaintiff's treating sources. Although the ALJ did not specifically state the weight given to reviewing state agency psychologist Dr. Andrew's opinion, contained within the PRT, it appears from the ALJ's decision that he gave significant weight to that questionnaire. The ALJ adopted Dr. Andrews' conclusions that plaintiff had moderate difficulties in social functioning, and

7

found that plaintiff had moderate difficulties in ADLs and concentration, persistence, or pace, noting that Dr. Andrews found only mild limitations in those areas. Considering the ALJ's decision to give no weight to the treating source opinions, along with the fact that there was no consulting psychiatric examination performed, it appears that the ALJ based his RFC finding largely on the PRT completed by Dr. Andrews, the state agency reviewing psychologist.

The Court agrees with plaintiff that the ALJ failed to properly apply the treating physician rule in considering Dr. Wolin's November 2010 opinion. The record establishes that Dr. Wolin had a longitudinal treatment history with plaintiff, wherein he personally treated plaintiff on at least five occasions between June and December 2009. Moreover, the record makes clear that Dr. Wolin oversaw plaintiff's treatment and managed plaintiff's medications, which, contrary to the ALJ's finding, were consistently prescribed throughout the relevant time period. The record establishes that plaintiff received treatment, through counseling, at Horizons on a biweekly basis, although the record does not contain treatment notes of all of plaintiff's visits. There is some indication in the record, however, that Ms. Strasser attempted to clarify with the Administration as to what records were to be provided, but it is not clear that this request was ever addressed. See T. 256. Overall, the record makes clear that

plaintiff treated on a regular basis for serious depressive symptoms, and that he required consistent medication for those symptoms.

The reasoning given by the ALJ for rejecting Dr. Wolin's opinion was that "Dr. Wolin's treatment records [did] not support [the findings in his opinion] and [the opinion was] inconsistent with the [plaintiff's] objective medical record as a whole." T. 67. The record, however, establishes that the ALJ's reasoning was invalid. As detailed above, plaintiff appeared regularly for treatment, and findings of his MSEs indicated consistent depressive symptoms, disturbances in thought processes, and near-constant reports of suicidal ideation. Especially given the fact that no consulting psychiatric examination was available, the ALJ was required to give controlling weight to Dr. Wolin's opinion, which was "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [] not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. §§ 414.1527(c)(2), 416.927(c)(2).

The ALJ additionally found that Dr. Wolin's opinion was unsupported because it was inconsistent with plaintiff's ADLs. The only example given by the ALJ was that Dr. Wolin's findings regarding attention and concentration were belied by plaintiff's ability to "watch[] documentaries sometimes, which support[ed] the [plaintiff's] ability to maintain his concentration." T. 67.

Obviously, however, an ability to "sometimes" watch documentaries does not "translate[ ] into the ability to perform substantial gainful work . . . in a typical competitive workplace environment." Mebane v. Comm'r of Soc. Sec., 2016 WL 519038, at *6 (W.D.N.Y. Feb. 10, 2016) (quoting Miller v. Colvin, 2015 WL 4892618, *5 (W.D.N.Y. Aug. 17, 2015)).

It is apparent from the ALJ's decision that he selectively chose evidence which supported a finding of non-disability, while ignoring evidence supporting Dr. Wolin's opinion. See Fuller v. Astrue, 2010 WL 3516935, *8 (W.D.N.Y. Sept. 7, 2010) ("The ALJ clearly ignored relevant portions of the medical evidence that would support a [finding of] disability . . . This selective adoption of only the least supportive portions of a medical source's statements is not permissible."). Although the ALJ concluded that plaintiff's ADLs indicated an ability to sustain full-time work activity, the medical record indicates that at one time, plaintiff's depressive symptoms were so severe with relation to his ADLs that he did not "chang[e] his clothing [including] underwear for at least 3 weeks." T. 225. Plaintiff's reports, which are consistent with Dr. Wolin's opinion, indicate that he experienced stress with routine ADLs, such that he rarely left his home due to anxiety. In short, there is ample evidence in the record which supports Dr. Wolin's opinion as to plaintiff's functional limitations.

Given the substantial evidence of record, the ALJ violated the treating physician rule by declining to give controlling weight to Dr. Wolin's opinion. Moreover, as discussed above, the reasons given by the ALJ for rejecting Dr. Wolin's opinion were not "good reasons." See Silva v. Colvin, 2015 WL 5306005, *5 (W.D.N.Y. Sept. 10, 2015) (citing Blakely v. Comm'r of Soc. Sec., 581 F.3d 399, 406 (6th Cir. 2009) (noting that the "good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific'"); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 243 (6th Cir. 2007) (noting that "good reasons" rule exists to "ensur[e] that each denied claimant receives fair process")). Given the controlling weight to which it was entitled, Dr. Wolin's opinion establishes plaintiff's disability as a matter of law.

The Court notes that the standard for directing a remand for calculation of benefits is met when the record persuasively demonstrates the claimant's disability, see Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980), and where there is no reason to conclude that the additional evidence might support the Commissioner's claim that the claimant is not disabled, see Butts v. Barnhart, 388 F.3d 377, 385-86 (2d Cir. 2004). That standard has been met in this case. Because additional proceedings would serve no purpose and would lead to further delay of plaintiff's claim which has been pending for six years, remand solely for the calculation and payment of benefits is warranted. See McClain v.

Barnhart, 299 F. Supp. 2d 309, 310 (S.D.N.Y. 2004) (recognizing "delay as a factor militating against a remand for further proceedings where the record contains substantial evidence of disability").

## VI.  Conclusion

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Doc. 14) is denied and plaintiff's motion (Doc. 13) is granted. This matter is reversed and remanded solely for the calculation and payment of benefits. The Clerk of the Court is directed to close this case. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

**S/Michael A. Telesca**
HON. MICHAEL A. TELESCA
United States District Judge

Dated:    March 31, 2016
          Rochester, New York.